GENERAL ELECTRIC CO. v. WINSTED GAS CO.

(Circuit Court, D. Connecticut. September 24, 1901.)

No. 916.

PATENTS—INFRINGEMENT—ELECTRIC GENERATORS.

The Eickemeyer patent, No. 342,504, for a magneto-electric and electro-magnetic machine, covers a unipolar or homopolar machine for generating a continuous current, which is an improvement on such machines in the prior art, but has never been practically useful; and the patent, while valid, is not entitled to a broad construction, to shut out other practical improvements in machines for producing alternating currents. Claim 7 construed, and *held* not infringed.

In Equity. Suit for infringement of patent. On final hearing.

Kerr, Page & Cooper and Frederick P. Fish, for complainant.

C. E. Mitchell and H. B. Brownell (Mitchell, Bartlett & Brownell), for defendant.

TOWNSEND, District Judge. Suit for infringement of patent No. 342,504, applied for on November 8, 1882, and granted on May 25, 1886, to Rudolph Eickemeyer, for a magneto-electric and electro-magnetic machine. The defendant is a mere user of a single machine. The real defendant is the Stanley Electric Manufacturing Company, of Pittsfield, Mass., which appears to be an entirely responsible party, and is engaged in the extensive manufacture of the alleged infringing machine; and no special reason is shown why this special user, instead of the manufacturer, has been sued.

The patent in suit relates to unipolar or homopolar machines, so called. A unipolar or homopolar machine is one in which currents are generated continuously in the windings in one direction. It is a machine in which the lines of force are cut in one direction only, as distinguished from alternating current machines, in which the lines of force are cut in alternately opposite directions, and which require the use of commutators to straighten out the current. The patentee's object was to produce a practical, commutatorless, continuous current machine. He states that hitherto "it has been necessary to use a device called a commutator," and that "there are many disadvantages attending the use of * * * such commutator," which do not arise in an apparatus in which the current "is induced in one di-

rection"; and he says: "The object of my invention is to obtain such a machine." He further states that, while such machines "have hitherto been devised by which a feeble continuous current can be developed, * * * so far as I am aware, no machine has been devised for practical purposes in the arts in which is embodied" his suggested mode of operation.

Perhaps the best example of the prior unipolar art, recognized by Eickemeyer as above, was the Siemens British patent, No. 3,134 of 1878, for unipolar generators. The Siemens illustrative drawing, introduced by defendant, shows an inner pole, A, surrounded by a revolving copper shell, b, and outside of this a cylindrical iron shell, A′, the function of which was to concentrate the force and reduce the resistance of the magnetic circuit. The current passes up from the positive pole through the copper shell, and down through an external conductor to the negative terminal, thus making a complete magnetic circuit. This external shell did not completely inclose the exciting coils of the field magnet, and the magnetic circuit was irregular. This machine and the publications relating to it showed the principle of connecting a plurality of armature conductors in a series in a single unipolar machine. Eickemeyer improved this construction by completely housing the exciting coils within the magnetic shells, thus preventing leakage, and by suppressing the outside return path, and placing his cylindrical conductors in a single annular magnetic field. The patentee further says (page 1, lines 63–74, of the patent):

"A characteristic feature of machines embodying my invention is the organization, with a magnet affording an annular field of force, of an armature which embodies two or more separate conductors, each of which, during its movement within said field of force, operates as an independent element, and is traversed by an electric current always in the same direction; and I have so organized said independent conducting elements that any two or more of them can be coupled in linear series."

The essence of Eickemeyer's improvement, thus described, consisted in taking the old unipolar, commutatorless, continuous current machine, and so coupling a number of separate and insulated conductors in linear series, constituting an armature by outside wires, as to increase the power of the current and get a higher continuous potential, varying according to the number of elements. He arranged two opposite cylindrical poles concentrically, so that the lines of magnetic force would flow from the outer to the inner pole, and be evenly distributed throughout the annular space between the two poles. Then he rotated a series of independent bars or conductors parallel to the axes of said cylinders, so as to always cut said lines of force in the same relative direction and generate a continuous current in one direction; he then added all the electro-motive forces together by coupling them together in linear series; that is, by connecting the positive terminal of one pole to the negative terminal of another, by the use of sliding contact rings and intermediate stationary external conductors. Counsel correctly says:

"In all of the machines devised by the patentee and claimed by him as of his own invention, the induced or armature circuit is made up of a series of independent bars or conductors, disposed in such a manner as to cut the

lines of the magnetic field of force always in the same relative direction; and these are coupled together in linear series by means of sliding contact rings and intermediate, stationary, external conductors. * * * A moment's consideration of the conditions which are present in the machine in question will suffice to show the purpose and result of this arrangement. All of the internal bars or sections of conductor, being parallel to the axis of rotation of the armature, generate currents in the same direction. To superimpose the currents in any two bars, therefore, so that their electromotive forces may be added to one another, the positive terminal of the one must be connected to the negative terminal of the other; but, as all of the terminals at one end of the armature are positive and at the other negative, this can be accomplished only by the use of stationary paths exterior to the magnetic field of force, and with which the independent internal conductors are maintained in electrical connection through connecting rings and rubbing contacts."

Eickemeyer illustrates various forms of his alleged invention by some 42 figures, and (on page 6, lines 115–125, of patent) refers to the special feature claimed to be appropriated by defendant as follows:

"It will be observed that, in many of the machines illustrated, the exciting helix or helices are inclosed within a mass of magnetic metal, which is chambered and which surrounds the armature, and that each helix is concentric with the axis of the armature, and that these parts, thus organized, involve a novel feature, which I deem of value, in that the magnetic currents, or forces are thereby practically restricted to the interior portions of the machine."

Complainant's counsel describes this construction and its advantages as follows:

"The particular feature exhibited by many of the forms of generator illustrated in the patent, and to which special attention is directed by the paragraph on page 6, lines 115 to 124, quoted above, will be seen to involve exterior and interior cylindrical magnetic elements, between which are the convolutions of the conductor or coils which impart magnetism unvarying in direction to both. The exterior element is the inclosing frame or shell of the machine. The interior element serves to complete the magnetic circuit, and thus to maintain a region of very intense magnetic force, within the influence of which are the armature or current-generating coils. The advantage which is attributed to this arrangement by the patent is stated to lie in the fact that 'the magnetic currents or forces are practically restricted to the interior portions of the machine.' This practical restriction of the magnetic currents or forces to the interior parts of the machine, by the inclosure of the concentric exciting helix or helices within a mass of magnetic metal, which surrounds the armature, results in important advantages (obvious to the electrician) in the operation of the machine, such as the practical constancy of the magnetic flux throughout the magnetic circuit of the machine, thereby preventing mechanical thumping and waste of energy in heating, the magnetizing of the machine with a much less expenditure of energy and a consequent reduction of expense, and great magnetic power with a minimum of material. A magnetic shell, inclosing a helix concentrically surrounding the armature, as shown and described in the patent, affords the shortest possible circuit for the lines of force enveloping the magnetizing conductors; the whole annular cross section being available for the purpose. There is a minimum resistance to the passage of the lines of force for two reasons: First, the path is shorter; and, second, its total cross section is relatively great, even with a shell of but moderate thickness. Moreover, the exterior shell affords the machine a desirable protection against mechanical injuries. In addition to the above, this particular arrangement in which, 'the exciting helix or helices are inclosed within a mass of magnetic metal, which is chambered and which surrounds the armature,' each helix being 'concentric with the axis of the armature,' lends itself very readily to the construction of machines having any number of poles, without increasing,

the number of field coils, as was necessary in other types of machines. In other words, this arrangement is peculiarly useful, not only in continuous current dynamos, but also in those alternating current machines in which the magnetic polarity of the rotating and stationary elements, respectively, is not reversed in the operation of the machine and not subject to violent fluctuations."

The only claim referring to this feature, involved in this suit, is the seventh, which is as follows:

"(7) In a magneto-electric or electro-magnetic machine, the combination, substantially as hereinbefore described, of a revolving armature, an inclosing magnetic shell, and one or more exciting helices housed within said shell and arranged concentrically with the axis of the armature."

Eickemeyer's construction was an improvement upon the constructions of the homopolar machines of the prior art, and involved invention. It does not appear that any such machine as is described in the patent has ever been manufactured or would have any practical value; but such a machine would produce a limited current, and would be capable of practical application, except for the fact that the ordinary machines in the art are vastly superior. The complainant's position is that:

"Eickemeyer was the first to devise and to apply to magneto-electric or dynamo-electric machines the feature of construction which involves an inner rotating cylinder, an outer inclosing magnetic shell, and a concentric exciting helix housed within the shell and imparting magnetism of one polarity to the core and another to the shell; and this feature is one of great practical value and importance in all machines of that class to which both the Eickemeyer and the Stanley generator belong, and in which a constant polar relation between the stationary and the rotary elements is an essential prerequisite."

The defendant's machine is "an inductor dynamo, namely, a machine in which all windings are stationary; the alternating current being produced by rotating magnetized iron masses in front of the armature coils, and does not require any collector, rings or brushes." Defendant thus describes and distinguishes his apparatus:

"The defendant's machine is a recognized standard machine of the alternating current generator of the 'inductor' type, in which, as contrasted with a rotating armature, carried by an 'inner pole,' about which the uniform or annular field exists, there is only a rotating field magnet core provided at each end with a plurality of poles, energized by a stationary exciting coil surrounding its center, and acting to vary the flux in a stationary armature, consisting of a stationary induced system imbedded in stationary iron frame, which magnetically connects the poles of the revolving field magnet core. In this generator, all the electrical conductors are stationary, a condition which is impossible in a machine of the 'unipolar' type. A reversal of defendant's machine would consist in making the inner field magnet core stationary and revolving the outer armature. That mere reversal would not consist in transferring the armature coils to the inner portion, with or without other changes, is demonstrated by the fact that the transfer of the Eickemeyer armature coils from the moving part to the stationary part would make that machine incapable of generating any current at all. An inductor system demands an irregular magnetic field, producing variations in flux. The unipolar system demands a regular, or, as Eickemeyer puts it, 'annular' (page 1, line 58), magnetic field, producing no variation of flux in any part of the machine. The two classes of machine demand different elements and different combinations of elements and different methods of operation."

The issue is on the question of infringement. One of the elements of the seventh claim is a "revolving armature." What, then, is the definition of the term "armature," as used in this claim? Defendant denies that he uses a revolving armature. In the Eickemeyer construction, the inner iron core is surrounded by copper conductors which revolve. In the defendant's machine, these conductors are stationary. Defendant's counsel contends that by "armature" is intended these conductors. He says:

"Our position is that the gist of the armature is the copper conductors, which revolve in the Eickemeyer machine and generate the current which is sent into the external circuit. In every one of the machines shown and described, the copper element, which constitutes the electric conducting portion of the revolving device, rotates. The iron element, however, which supports the rotating armature, sometimes revolves, as in Fig. 23, and sometimes does not revolve, as in Fig. 22. It is material that the copper conductor should revolve. It is immaterial whether the iron, within the copper conductors constituting the armature, should revolve. Indeed, Eickemeyer nowhere speaks of the internal iron as being the armature or as being a part of the armature. He always calls it, if I am right, either a magnet pole or a magnet."

Complainant's position is as follows:

"In every form of machine shown in the Eickemeyer patent, and in every conceivable embodiment of the invention which involves an outer shell, there is shown, and there must be presented, an inner core. Its absence would be fatal, in that it would leave no magnetic circuit such as an operative machine demands. The invention of claim 7, in order to be realized in any conceivable form, must include a magnetic core; and it is equally essential that this core be surrounded by the exciting helix or helices. The relations or positions of the armature conductors to the exciting helix or helices are largely immaterial. It is not at all necessary that they have their axes concentric with that of the helix or helices, but it is necessary that the core and the helix be concentric. Unless claim 7, therefore, includes by the term 'armature,' and unless lines 115 et seq., on page 6, are intended to describe as the 'armature,' the iron core with which the armature conductors are shown as associated, the said paragraph and the seventh claim are meaningless. By no other conceivable arrangement or device than the shell and core could the lines of force be practically restricted to the interior of the machine."

Complainant's contention is, in substance, that the term "armature" in the claim should be construed to mean the inner part which revolves, whether the copper conductors revolve with it or not. That the patentee would have so stated his claim as to have made it applicable to an alternating current machine, if he had foreseen this litigation, is probable. That by "revolving armature" he in fact meant "revolving conductors" seems reasonably clear. One instance of its use is:

"The armature consists of insulated conductor bars, b (see Fig. 34), imbedded in a cylindrical shell of hard rubber (see Fig. 36), which has grooves to receive the conductor bars, and is rigidly secured to the inner rotating magnet, A."

In several other places in the specifications he distinguishes between the armature and the inner magnet, which, in most of his constructions, rotates with it. From the evidence it also appears that this use of the word "armature" to describe the conductors accords with the prevailing usage at the date of the application for the pat-

ent. If Eickemeyer's real invention, as his counsel insists, is equally valuable in a machine in which the conductors are stationary,—an alternating current machine,—then his invention is broader than his claim. It may not be necessary that he should have foreseen all the uses to which the invention may be applied, but it is necessary that the claim should not be so worded as to exclude them. Even if by the term "armature" Eickemeyer meant the rotating element comprising the iron core, as contended by complainant, his language so repeatedly contradicts his meaning that this court would not be justified in adopting such alleged meaning. In fact, it is immaterial whether the iron core rotates or not. The violence of the strained construction contended for by counsel for complainant is suggested in the argument in support of its interpretation,—that, inasmuch as the application was pending for five years, the court might "assume that it was amended by some man other than the patentee, who used different forms of expression, and did not use them in the same sense as Eickemeyer." Even if such a violent assumption might justify a decree in favor of any patent, it ought not to be invoked to broaden a mere unpractical improvement in one limited branch of an art to cover a practical development in another branch of such art.

Furthermore, even if the words "revolving iron core" were substituted for "revolving armature" in the claim, the constructions and operation of the machines differ so widely that defendant's machines could not be held to infringe. In Eickemeyer's there is no variation of the continuous magnetic flux. In defendant's there is a constant variation and pulsation which is essential to its operation. If the armature coils of defendant were to be changed to the revolving part, as in Eickemeyer's, the machine would be inoperative. If, in Eickemeyer's, the armature coils were attached to the stationary part, as in defendant's, it would be inoperative. The requirement, in Eickemeyer's, that each linear conductor should be connected to the other by an outside current, would make it practically inoperative, if the armature were stationary. The improvement is so narrow that it is doubtful whether it should in any case be extended to cover a reversal of operations; but, even if it could be so extended, it cannot embrace the defendant's construction, because the patented machine could not itself be so reversed in operation as to make an operative machine. The patent in suit covers a mere impracticable improvement upon the prior continuous current unipolar art. The defendant's construction embodies a practical improvement in a distinct alternating current inductor art.

These conclusions dispense with the necessity of discussing defendant's contention that the serious leakages essential to the operation of its machine, by reason of its different construction, show that defendant does not use the functionally inclosing magnetic shell, whereby "the magnetic currents or forces are practically restricted to the interior portions of the machine," and a uniform field is secured, and that the sole function of defendant's iron frame is to render the field less uniform and to support the armature. For 20 years the courts have been struggling to so develop the patent law as to protect the rights of the contracting parties, and to give full

meaning to the promise implied in the constitutional grant, "to promote the progress of useful arts, by securing to inventors the exclusive right to their discoveries." For the protection of the inventor, they have differentiated him from the mechanic. They have extended the scope of patentable inventions. We must not forget, however, that the foundation of the duty to the patentee or the public is "to promote the progress of useful arts." When, therefore, an inventor, claiming only to be a mere improver upon an art previously confessedly impracticable, is admitted to the race by a patent granted on a theoretical utility, but finds no practical method to surmount the obstacle, or break down the barriers which have closed the way to his predecessors, while his machine may still keep its place in the chosen path, yet, having no inherent capacity for forward movement, the inventor will not be permitted to drag it across the whole road open to the world of invention, and pervert the purposes of his admission to promote, by obstructions to prevent, the progress of the useful arts. "A construction which would permit such a course would operate rather to discourage than to promote inventive talent." Deering v. Winona Harvester Works, 155 U. S. 286. And, while an inventor may not be improved out of his invention, yet he may be altered out of a mere improvement patent by a construction differing in means, object, and result.

Let the bill be dismissed.